## CORDIER, *Appellant*, v. BROWN *et al.*

**Deed:** PARTITION : ESTOPPEL.   A deed to a husband and wife for their joint lives, and the life of the survivor, gave the husband power to convey an undivided half of the premises in fee with remainder over to the wife's heirs.   The husband and wife conveyed an undivided half in fee to B. under whom defendant claims.   They then conveyed the west half to their grantee B. and he reconveyed the east half to them.   *Held* that the first conveyance by the husband and wife limited the interest of an heir of the wife, who would have taken an undivided one-third had the husband not executed his power to an undivided one-sixth in the entire tract, and while such heir's rights were not affected by the subsequent partition deeds, yet when she subsequently attempted to convey an undivided one-third of the east half and in her deed expressly recognized the conveyance of the west half and adopted the dividing line between the two halves as thereby established, she was estopped to claim an undivided sixth of the west half.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY,  Judge.

AFFIRMED.

*Martin, Laughlin & Kern* for appellant.

The plaintiff is not estopped, by reason of her deed to Peck, from claiming her interest in the west half.

*Noble & Orrick* for respondents.

The plaintiff, by her deed to Peck, ratified the partition and she is estopped from claiming any interest in the west half.

BRACE, J.—This is an action of ejectment in which the plaintiff sues to recover an undivided one-sixth of certain premises in the city of St. Louis described in the petition by metes and bounds, being *the west half* of a tract of seven and one-half arpents, conveyed by John Hogan and wife, who was the owner in fee simple of said seven and one-half arpent tract, by deed dated February 10, 1853, to Guilliaume Hauguel and Eulalie Hauguel, his wife, "to have and to hold the same unto them the said Guilliaume Hauguel and Eulalie Hauguel for and during their joint natural lives and the life of the survivor, with power in the said Guilliaume Hauguel, to convey in fee simple forever, or to mortgage or otherwise encumber the one equal undivided half of said granted premises, and, after the death of the said Guillaume and Eulalie Hauguel, said granted premises, or so much thereof as shall not have been conveyed by the said Guilliaume Hauguel, shall pass to and vest in the heirs of said Eulalie Hauguel forever."

On the fourth of May, 1863, Guilliaume and Eulalie Hauguel, by general warranty deed of that date, conveyed an undivided one-half of said seven and one-half arpent tract to Andrew S. Barada. On the sixteenth of March, 1864, Guilliaume and Eulalie Hauguel, by a second general warranty deed of that date, conveyed by metes and bounds the *west half* of said seven and one-half arpent tract to the said Barada, and the said Barada, on the same day, by quitclaim deed in which his wife joined, conveyed by metes and bounds the *east half* of said seven and one-half arpent tract to the Hauguels "to have and to hold the same unto them the said Guilliaume Hauguel and Eulalie Hauguel for and during their natural lives, and the life of the survivor, and after the death of both of them the said granted premises shall be vested unto the heirs of said Eulalie Hauguel the same as provided by deed of John Hogan."

On the twelfth of September, 1865, Barada and wife by quitclaim deed conveyed by metes and bounds the *west half* of said seven and one-half arpent tract to William B. Thompson from whom defendants deraign title by mesne conveyances.

Guilliaume and Eulalie Haugel were husband and wife ; the former died in 1872, the latter in September, 1885. The plaintiff is a child of the said Eulalie by a former husband and one of two children whom she left surviving her at her death, and who, with the children of a third child deceased, are her heirs at law.

On the fourteenth of August, 1872, the plaintiff, by a general warranty deed of that date, conveyed to Charles H. Peck an undivided one-third of the *east half* of said seven and one-half arpent tract. In this deed, she described herself as "a widow, daughter of Eulalie Hauguel, wife of Guilliame Hauguel," and gave the following description of the tract in which she conveys such interest : "Commencing at a point in the northern line of United States survey number 1276 of the St. Louis Common Fields confirmed to the legal representatives of Auguste Conde, eight hundred and twenty-six feet, eleven and a half inches distant eastwardly from, the eastern edge of Vandeventer avenue, the said beginning point being the northeast corner of *a tract of three and three-quarters arpents conveyed to Andrew S. Barada by said Guilliaume Hauguel and wife*, thence eastwardly with the north line of said survey number 1276, south sixty degrees one thousand and ten feet and seven and a half inches to a point, thence south, twenty-seven degrees, twenty-five minutes west, ten feet, thence north, sixty-one degrees west, three hundred and four feet to a point, thence south, twenty-nine degrees west, one hundred and eighty-three feet to a point in the south line of said survey 1276 ; thence west with said southern line of said survey 1276, north, sixty-one degrees west, seven hundred and seven feet

one and a half inches to a stone at the southeast corner of *said tract of three and three-quarters arpents* conveyed *to A. S. Barada by said Hauguels ;* thence north with the eastern boundary line *of said Barada three and three-quarter arpent tract* north, twenty-seven degrees, five minutes east, one hundred and ninety-two feet, six inches to the point of beginning ; containing three and three-quarters arpents and being the east half of a tract of seven and a half arpents, heretofore conveyed to said Guilliaume and Eulalie Hauguel by John Hogan and wife, * * * the same being bounded north by United States survey number 3285, *west by Barada*, south," etc.

Ever since the execution of the deeds by the Hauguels and Barada on the sixteenth of March, 1864, Barada and his grantees have been in the exclusive possession of the *west half* of said seven and one-half arpent tract, and the defendants at the commencement of this suit were so in possession, all claiming title under those deeds, of which each by its reference in the description of the premises conveyed showed that they were but parts of a single transaction intended to effect a partition of the seven and one-half arpent tract between the parties. The boundaries in the deed of plaintiff to Peck correspond with those in the deed from Barada to the Hauguels.

I. It is quite too plain for argument and apparent on the face of the *habendum* clause from Hogan to the Hauguels that the estate of Guilliaume and Eulalie was limited by that deed to a life estate in the seven and one-half arpent tract, and the power of the said Guilliaume was limited to the power to convey in fee simple an undivided half thereof. To hold that Guilliaume under the terms used by the grantor in that deed had power to convey the whole tract in fee simple would do violence to the grammatical construction of the sentence in which the power is granted and would defeat the

evident intent of the grantor to make provision for the heirs of Eulalie by settling upon them beyond perad-venture an estate in fee simple after the termination of the life estates, in any event, to the extent of the one undivided half thereof.

It is also evident that if the said Guilliaume had not executed the power in the deed, upon the death of him and his wife, the plaintiff would have been entitled to an undivided third in fee simple of the whole tract. But having executed the power by his conveyance to Barada, of the fourth of May, 1863, of the one undivided half in fee simple, by that act her estate was reduced from a possible undivided third in fee simple to a cer-tain undivided one-sixth of the whole tract upon the termination of the life estates. By this conveyance, Guilliaume exhausted all the power granted him by which the *quantum* of plaintiff's interest in the seven and one-half arpent tract could be by him or his wife affected. While the subsequent conveyance between the Hauguels and Barada had the effect of severing the right of possession of the common tract between them during the pendency of the Hauguels' life estate, they in no way affected *per se* the plaintiff's right to an undivided sixth of the whole tract in fee simple upon the termination of that life estate. And this was the interest which the plaintiff, as one of the heirs apparent of Eulalie Hauguel, had in the whole tract at the time she came to make her deed to Peck; and but for that deed would have been her interest in the whole tract, the possession of which she would have been entitled to at the commencement of this suit.

When she came to make that deed, she could have conveyed to Peck in fee, subject to the life estate, her undivided sixth interest in the whole tract, or her undivided sixth interest in either the east or west half specified by metes and bounds. *Barnhardt v. Campbell*, 50 Mo. 597. She did neither however, but

undertook to convey an undivided third of the *east half* to Peck, and gave him a warranty of title to such third, when she was advised by the deed of Hogan and the first deed of the Hauguels, the source of her title, that she only had an undivided sixth interest in the premises unless by some other means she had acquired another sixth. Having thus in the first breath asserted her right to convey an undivided third in the *east half* she sets about describing it by metes and bounds and the very next breath is used to assert that the beginning point of the premises about to be conveyed is "*the northeast corner of a tract of three and three-quarters arpents conveyed to Andrew S. Barada by said Guilliaume Hauguel and wife,*" and then, after running eastwardly, then southwardly, then westwardly she comes to a stone which she declares is the "*southeast corner of said tract of three and three-quarters arpents conveyed to A. S. Barada by said Hauguels,*" and for her fourth line she runs "*thence north with the eastern boundary line of said Barada's three and three-quarter arpent tract to the beginning,*" the identical dividing line erected by the Hauguels and Barada in their deeds *inter sese*, conveying the east half to Hauguels and the west half to Barada, and she then winds up her description by saying the premises conveyed is the east half of the seven and one-half arpent tract bounded "*on the west by Barada,*" *i. e.*, by Barada's west half of that tract.

Conceding that the deeds of partition between the Hauguels and Barada were outside the line of plaintiff's chain of title and that she was therefore not bound to take notice of them, yet the contents of her own deed show she had actual notice of them and with actual knowledge of their contents deliberately adopted the partition line which had been drawn by them between the east and west halves as the line which divided her land, as well as that of the Hauguels, from that of

Barada, declaring that her interest was in the east half and that the west half was Barada's, and in connection with this declaration asserting that she had an undivided third in fee simple in the east half, which she could not have had, except she intended by her deed to confirm the partition, which had previously been made, and relinquish her interest in the west half. We think it must be held that she, by her voluntary deed, made for a valuable consideration, did thereby relinquish her interest in the west half and confirmed and adopted the partition theretofore made, and that she now ought to be estopped from setting up a claim to an undivided sixth of said west half.

The trial court so held, and its judgment is affirmed. All concur except RAY, C. J., absent, and BARCLAY, J., not sitting.